**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

## LETTER OPINION

June 30, 2006

| | |
|---|---|
| Rodney A. Brown<br>Brown & Fox, P.C.<br>110 East 59th Street<br>New York, NY 10022 | John B. Livelli<br>Robinson & Livelli<br>Two Penn Plaza East<br>Newark, NJ 07105-2237<br>*Attorneys for Defendant CMH Care Group,*<br>*Inc. and Christian M. Hall* |
| William Sandelands<br>Tompkins, McGuire, Wachenfeld & Barry<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102-4070<br>*Attorneys for Plaintiff* | Paul H. Schafhauser<br>Herrick, Feinstein, LLP<br>2 Park Ave.<br>New York, NY 10016-9301<br>*Attorneys for Defendant Philip Harris* |
| | Jay J. Friereich<br>Poe & Freireich, P.A.<br>256 Columbia Turnpike<br>Columbia Commons – Suite 202<br>Florham Park, NJ 07932<br>*Attorneys for Defendant Timothy Dobbs* |

**Re: American Pharmaceutical Partners, Inc. v. C.M.H. Care Group, Inc., et al.,**
<u>**Docket No. 00-CV-5613 (WJM)**</u>

Dear Counsel:

This matter is before the Court on American Pharmaceutical Partners, Inc.'s ("APP") motion for appeal from Magistrate Judge Hedges' discovery order of October 25, 2005. Also before the Court is APP's motion for appeal from Magistrate Judge Hedges' February 22, 2006 letter opinion and order denying APP's motion to amend its First Amended Complaint to add

1

certain claims and new defendants. For the reasons stated below, both motions are **DENIED** and both of Magistrate Judge Hedges' orders are **AFFIRMED**.

**BACKGROUND**

The facts and procedural history of this matter are sufficiently detailed in this Court's prior opinions issued in November 2004 and August 2005, thus the following is only a brief summary. Plaintiff APP has been a manufacturer of pharmaceutical products, consisting primarily of injectable products, since June 1998. Defendant CMH purchased products from APP during the period of January 1999 through June 2000. APP offers these products at varying prices, depending upon the purchaser. If the purchaser is a distributor or wholesaler, it will pay significantly higher prices than "own use" purchasers, who usually purchase at a negotiated price through a "group purchasing organization" ("GPO").

APP brought this action against CMH for, among others, fraud and unjust enrichment alleging that CMH purchased APP products for "own use" and then resold those products as a wholesaler. CMH filed an answer and, after extensive discovery and motion practice before both this Court and Magistrate Judge Hedges, filed counterclaims alleging various antitrust violations. On December 20, 2002, by motion, APP filed a First Amended Complaint in response to allegations set forth by CMH. On December 12, 2005, APP moved before Magistrate Judge Hedges to file a Second Amended Complaint pursuant to Rule 15(a) to add additional claims and parties related to CMH's alleged continued deceptive procurement of APP products from third parties following the demise of the APP/CMH business relationship.

On October 3, 2005, the parties came before Magistrate Judge Hedges for a hearing (the "October 2005 Hearing") regarding a series of discovery issues the parties had previously outlined. Following the October 2005 Hearing, a form of order was provided by CMH to Magistrate Judge Hedges and he signed this order on October 17, 2005. However, after certain changes were requested by APP, CMH submitted a slightly corrected order to Magistrate Judge Hedges who signed this corrected order on October 25, 2005 (the "October 2005 Order.")

On February 14, 2006, the Parties came before Magistrate Judge Hedges regarding APP's motion to amend to file a Second Amended Complaint. Magistrate Judge Hedges issued a letter opinion and order on February 22, 2006 (the "Letter Opinion") denying APP's motion. This matter is before the Court now on APP's appeal of both the October 2005 Order and the Letter Opinion.

**DISCUSSION**

**I.     Standard of Review**

A magistrate judge's order on a non-dispositive motion should not be disturbed unless the district court finds the ruling clearly erroneous or contrary to law. *See Haines v. Liggett Group*

*Inc.*, 975 F.2d 81, 91 (3d Cir. 1992); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). The district court is bound by the clearly erroneous rule as to findings of fact, while the phrase "contrary to law" indicates plenary review as to matters of law. *Haines*, 975 F.2d at 91. According to the Supreme Court, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Moreover, absent such a conviction, a district court will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently. *Andrews v. Goodyear Tire & Rubber Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J. 2000) ("A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review.")

## II.   APP's Appeal of the October 2005 Order

The October 2005 Hearing and subsequent Order involved a series of discovery issues, and APP appeals from seven points in the October 2005 Order. The Court will address each of these issues in turn below.

### (a) Magistrate Judge Hedges' Refusal to Allow APP to Obtain "Paper Trails" is AFFIRMED

Paper trails are documents attached to pharmaceutical purchasing invoices that show the movement of product from one buyer to the next. APP sought invoices and paper trails related to CMH purchases of particular APP products from third-parties; Magistrate Judge Hedges ordered CMH to produce the invoices but specifically excluded the paper trails. (Oct. 2005 Order ¶ 3-4.) APP argued at the October 2005 Hearing that invoices without paper trails are of limited utility; and in their appeal, they assert that Magistrate Judge Hedges' ruling was clearly erroneous because he "did not fully appreciate 'paper trails'. . . ." (Plaintiff's November 4, 2005 Memorandum of Law ("APP Nov. 2005 Memo") at 8.) However, a review of the hearing, pleadings and history of the case indicate that Magistrate Judge Hedges was well apprised of the paper trail issue. (Nov. 4, 2005 Affidavit of Rodney A. Brown ("Nov. 2005 Brown Aff.") at Ex. E; Oct. 2005 Hearing Tr. at 10-12.) Moreover, it is clear that the question of paper trails was not new to discovery; indeed the matter had been discussed before Magistrate Judge Hedges during an April 25, 2005 hearing when APP counsel admitted that it had "indications from paper trails" as early as 2002 but they "didn't, frankly, appreciate a focus" on them at that time. (Apr. 25, 2005 Hearing Tr. at 8-9.) Finally, it is apparent to this Court that Magistrate Judge Hedges' denial of the paper trails was, correctly, an attempt to reign in APP from revisiting old issues that had already been the subject of discussion and discovery. (*See e.g.* Oct. 2005 Hearing Tr. at 10.)

### (b) APP's Payment of Costs Related to Production of the Invoices is AFFIRMED

Magistrate Judge Hedges' October 2005 Order holds that CMH should produce certain invoices "upon payment of the cost thereof by APP, subject to possible cost-shifting later in the

litigation." (Oct. 2005 Order ¶ 3.)  APP argues that this is unfair in that "neither party has required the other to pay for discovery production . . . nor has the Court previously imposed such a requirement."  (APP Nov. 2005 Memo at 11.)  Magistrate Judges are given great discretion on discovery issues because such issues are in their exclusive authority.  *Bank of America, N.A. v. Websci Tech., Inc.*, No. 05-CV-1306, 2006 WL 1210839 at *2 (D.N.J. May 4, 2006).  Production cost shifting is just such a discovery matter well within Magistrate Judge Hedges' discretion.  Indeed, APP's pleadings admit that such cost-shifting has previously occurred in this matter.  (APP Nov. 2005 Memo at 11.)

### *(c) Limiting Production to "Subject APP Products" is AFFIRMED*

The October 2005 Order limits CMH and non-party production to "subject APP products."  (Oct. 2005 Order ¶ 3, 4, 5, and 9.)  There are approximately 71 products at issue between APP and CMH that are listed on APP's damage statement; these products have become known in the litigation as the "subject APP products."  (November 15, 2005 Declaration of John B. Livelli ("Nov. 2005 Livelli Decl.") at Ex. 8.)  APP argues that Magistrate Judge Hedges allowed himself to be misled by CMH's proposed order to limit production to the subject APP products while his comments at both the October 2005 Hearing and a prior hearing on April 11, 2005 indicated a more expansive production.  This argument is seriously flawed.

There is a long history in this litigation of orders limiting production to the subject APP products.  As an initial point, a review of the October 2005 Hearing transcript shows that the subject of new production was predicated on APP's allegation that CMH had not complied with earlier discovery orders.  (Oct. 2005 Hearing Tr. at 10.)  These earlier orders are repeatedly limited to the subject APP products.  Indeed, Magistrate Judge Hedges discovery order from July 2001 already so limited production.  (July 2, 2001 Discovery Order ¶ 1, 4.)  As recently as the February 23, 2005 discovery hearing ("Feb. 2005 Hearing"), Magistrate Judge Hedges and APP counsel appeared to be on the same page limiting discovery to the 71 subject APP products.  (Feb. 2005 Hearing Tr. at 14-17, 27.)  Magistrate Judge Hedges' March 14, 2005 Discovery and Scheduling Order ("Mar. 2005 Order") likewise limited production to the subject APP products.  (Mar. 2005 Order ¶ 1.)  Moreover, the April 11, 2005 Hearing does not appear to turn from this policy.  (Apr. 11, 2005 Hearing Tr. at 15.)

Finally, correspondence from CMH to Magistrate Judge Hedges between the October 2005 Hearing and Order clearly outlines APP's desire to expand production beyond the subject APP products and strongly urges Magistrate Judge Hedges to continue limiting production to the subject APP products.  (Nov. 2005 Livelli Decl. at Ex. 11.)  Magistrate Judge Hedges, then, was well apprised of APP's position when he signed both the original October 17, 2005 Order and the corrected October 25, 2005 Order, both of which limited production to the subject APP products.  This background, combined with Magistrate Judge Hedges' long-time involvement in this matter, demonstrates that Magistrate Judge Hedges both completely understood the nature of the "subject APP product" limitation in his October 2005 Order and that he based that Order on a solid foundation.

### d) *Limiting DTR Medical Invoices to those APP Products Sold to Nextron is AFFIRMED*

Magistrate Judge Hedges' October 2005 Order limited production by Defendant Timothy Dobbs to "invoices reflecting sales of any of the subject APP products by DTR Medical Wholesalers to Nextron which were sold by Nextron to CMH." (Oct. 2005 Order ¶ 4.) At the October 2005 Hearing, APP outlined that it had learned that DTR had sold APP products to third parties who then sold them to CMH, and the only specific instance they could cite was of sales to Nextron. (Oct. 2005 Hearing Tr. at 13-15.) Magistrate Judge Hedges said in response that he was unwilling to "open the world" to APP's request, but asked DTR to provide "these sales records that specifically reference these things" APP had just requested. (*Id*. at 15.) Moreover, in the October 12, 2005 letter to Magistrate Judge Hedges enclosing the proposed form of order, CMH counsel specifically outlined that although the hearing record is not crystal clear that such discovery was limited to Nextron, both the language and flow of the hearing, as well as Magistrate Judge Hedges' stated intent throughout to limit any expansion of discovery, led CMH to limit such DTR production to Nextron. (Nov. 2005 Livelli Decl. at Ex. 11.) Once again, the hearing transcript, along with the history of the case and the specifics of the situation, leave the Court firmly in the belief that the Order was proper.

### e) *The Limitation of a Subpoena on "MB of New Jersey" to Production of Records of its Purchases of the Subject APP Products it Sold to CMH, and of its Sales of those Products to CMH Without Allowing Deposition is AFFIRMED*

Both at the October 2005 Hearing (Oct. 2005 Hearing Tr. at 15) and in correspondence between APP and Magistrate Judge Hedges, APP argued that it needed a subpoena to obtain both expansive documentary and testimonial evidence from non-party MB of New Jersey (Nov. 2005 Brown Aff. at Ex. D). Magistrate Judge Hedges' October 2005 Order, however, limits the subpoena on MB to the subject APP products without allowing deposition. APP argues again that Magistrate Judge Hedges did not understand APP's need for full production of *all* relevant MB documents and that his October 2005 Order differed from his statements at the October 2005 Hearing. Once again, this argument is plainly unfounded.

As mentioned above, Magistrate Judge Hedges was apprised, both in prior correspondence and at the October 2005 Hearing, of APP's precise requests and arguments for expansive discovery as to non-party MB; so it is difficult to comprehend APP's argument that Magistrate Judge Hedges, with his long involvement in this matter and the additional benefit of APP's specific arguments about MB, could not comprehend the implications of their straightforward request. Furthermore, at the October 2005 Hearing, Magistrate Judge Hedges' clearly limited the subpoena to documents. The discussion at that hearing centered on documentary, as opposed to testimonial evidence; and Magistrate Judge Hedges was unequivocal in his refusal to allow broad new discovery stating "I'm getting very tired of going down the primrose path in this case." (Oct. 2005 Hearing Tr. at 18.) Furthermore, the earlier discussion about the "subject APP products" likewise applies here. Finally, a deposition of MB would entail entirely different costs than mere document production, and it is reasonable that Magistrate

Judge Hedges would again have tried to limit any new, expansive and expensive discovery.

### e) *Magistrate Judge Hedges' Order Regarding Redesignation of Documents Pursuant to the Protective Order is AFFIRMED*

APP asks this Court to allow it to communicate information involving "surrogate/captive" entities to its in-house counsel as an exception to the June 21, 2001 Protective Order Regarding Confidentiality of Documents and Information. As an initial point, this request is not properly before this Court on this appeal. Despite APP's similar request of Magistrate Judge Hedges during the October 2005 Hearing, Magistrate Judge Hedges was clear at that time that he was unwilling to make such a ruling and wanted the parties to instead redesignate all confidentiality designations by October 21, 2005. (Oct. Hearing Tr. at 26.) The October 2005 Order follows precisely. Therefore, APP's request is not an appeal of any issue decided in the October 2005 Order, rather it is a request that this Court make an initial ruling on the confidentiality issue. Such a request is improper in this appeal. Moreover, Magistrate Judge Hedges was well within his role on discovery issues in ordering the parties to redesignate pursuant to the Protective Order.

### f) *CMH's Use of Public Sources to Obtain APP Rebate Agreements and Price Reports to Federal and State Medicaid and Medicare Agencies is AFFIRMED*

APP alleges that the October 17, 2005 version of the Order omitted "rebate agreements" and so too should the final version. Again, APP is asking this Court to rule on an issue that is not properly before it on this Appeal. The October 2005 Order simply advised CMH to try and obtain certain information from public sources; and, if it was unable to so obtain the information, the Court would entertain a CMH request for APP production of same at a hearing on November 28, 2005. Moreover, the fact that Magistrate Judge Hedges physically crossed out the term "rebate agreements" in the earlier Order (Oct. 17, 2005 Order ¶ 8) and not in the later Order lends no additional weight to the initial Order's wording over the final Order.

### g) *The Portions of the October 2005 Order Referring to Paul Pilof are Moot*

By letter to the Court dated February 9, 2006, counsel for APP informed this Court that it had been unable to serve Mr. Pilof within the extended period of time ordered by Magistrate Judge Hedges. This period having lapsed, the points in the October 2005 Order referring to subpoena of Mr. Pilof are moot.

## III.   APP's Appeal of the February 2006 Order

Motions to amend are usually considered non-dispositive. *See Thomas v. Ford Motor Co.*, 137 F. Supp.2d 575, 579 (D.N.J. 2001). A denial of a motion to amend is reviewed under the abuse of discretion standard. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). "An abuse of discretion occurs when the District Court's decision rests upon a clearly

erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Montgomery County v. Microvote Corp.,* 320 F.3d 440, 445 (3d Cir.2003) (internal citations omitted.)

A party is permitted to amend a pleading once as a matter of course any time before the responsive pleading is served or if there is no responsive pleading permitted, the party may amend the pleading within 20 days after it is served. Fed. R. Civ. P. 15(a). In any other instance, the party may amend only by leave of the court or if the other party consents. *Id.* "[L]eave shall be freely given when justice so requires." *Id.* As Magistrate Judge Hedges correctly explained in his Letter Opinion (Letter Op. at 3), leave to amend may be denied for four reasons: 1) undue delay, 2) bad faith or dilatory motive, 3) undue prejudice, or 4) futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Since Magistrate Judge Hedges' denial of the motion to amend was based on several of the *Foman* factors, and this appeal does not present any credible challenge to his interpretation of the law, Magistrate Judge Hedges' decision was clearly not contrary to law. The only question, then, is whether his factual analysis was clearly erroneous.

The proposed amendment would add multiple parties and claims related to what APP contends is a new pattern in which CMH utilized surrogate, captive or phantom entities to obtain discounted APP products from third parties under the guise of self-use. (Letter Op. at 2.) Magistrate Judge Hedges found that this amendment would cause substantial or undue prejudice to the non-moving parties, especially defendants Timothy Dobbs and Philip Harris. (*Id.* at 4-5.) As Magistrate Judge Hedges outlined, in deciding the existence of undue prejudice the Court should focus on the hardship to the defendants if the amendment was permitted. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Despite APP's curious argument to the contrary, the rule in the Third Circuit is that a court evaluating prejudice considers "whether allowing an amendment would result in additional discovery, cost, and preparation" to defendants. *Id.* Discovery began in this matter over five years ago, and Dobbs and Harris are ready to proceed to trial. (Letter Op. at 5.) Magistrate Judge Hedges held that Dobbs and Harris, individual defendants caught in a dispute between two large corporate entities, would both suffer additional costs and delays if discovery was reopened. (*Id.*) Key to his holding was that APP failed to specify the amount of additional discovery needed by any new claims and parties, leading him to "believe that there may well be a 'fishing expedition' for evidence." (*Id.*)

On the basis of undue prejudice alone, Magistrate Judge Hedges was justified in denying APP's motion to amend because substantial or undue prejudice to the non-moving party is a sufficient ground for denying a motion to amend. *Lorenze v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Indeed, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978). It is only "in the absence of substantial or undue prejudice . . . [that] denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz*, 1 F.3d at 1414. Therefore, the Court is comfortable affirming his decision

solely on the grounds of undue prejudice.

However, Magistrate Judge Hedges substantially detailed why the motion should also be denied on the undue delay in moving to amend and the futility of the proposed amendment. In brief, Magistrate Judge Hedges found that APP had knowledge more than two years ago – at the time it filed its First Amended Complaint – of the very same behavior on which it now based its proposed amendment. (Letter Op. at 4.) However, APP slept on its obligations and did not conduct discovery at that time regarding the information that it already knew existed. (*see, e.g.,* CMH April 24, 2006 Opp. Brief at 12.) Indeed, this is one of the situations in which "delay . . . [became] undue [because] . . . a movant has had previous opportunities to amend a complaint." *Cureton*, 252 F.3d at 273.

Finally, Magistrate Judge Hedges found that the proposed amendments were futile. (Letter Op. at 5.) As he outlined, an amendment is considered futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal citations omitted.) Although APP's proposed claims arise under fraud, it has been plainly unable to show the elements necessary to establish such fraud. (Letter Op. at 5.) *See also Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp.2d 434, 458 n.17 (D.N.J. 2002) (outlining the elements of fraud.) Key among these failings was APP's inability to prove any actual damages from the alleged harm. (Letter Op. at 6.) APP's pleadings fail to show otherwise. (*See, e.g.,* APP Mar. 8, 2006 Memorandum of Law at 18-19.) Therefore, despite the fact that APP's proposed amendment is denied for undue prejudice, it would likewise be denied for substantial delay and futility.

**CONCLUSION**

In conclusion, APP's motions to appeal Magistrate Judge Hedges' discovery order of October 25, 2005 and letter opinion and order of February 22, 2006 are **DENIED**, and both of Magistrate Judge Hedges' orders are **AFFIRMED**.

An appropriate Order accompanies this Letter Opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

cc:   The Hon. Ronald J. Hedges, U.S.M.J.